IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIA LOPEZ, on behalf of M.L., | ) ) ) | CASE NO. 1:13CV00092 |
| Plaintiff, | ) ) | |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,[1] | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) ) | |

Plaintiff, Antonia Lopez ("Plaintiff") on behalf of M.L., a minor, ("Claimant"), seeks judicial review of the final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (The "Act"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 14.

As more fully explained below, the Commissioner's decision is **REVERSED AND REMANDED** because the ALJ failed to explain adequately how he evaluated the opinions of Claimant's treating psychiatrist Dr. Medaramelta. The ALJ's lack of discussion of Dr. Medaramelta's opinions with respect to Part B of Listing 112.11 and/or the functional domains set forth in 20 C.F.R. § 416.926a(b)(1) denies this Court the opportunity for meaningful review to determine whether the ALJ's decision not to provide controlling weight to Dr. Medaramelta's opinions and the Administrative Law Judge's ultimate finding of no disability are supported by

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(D), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

1

substantial evidence.

## I. Procedural History

On or about May 29, 2009, Claimant's mother protectively filed an application for SSI on behalf of Claimant alleging disability based on Attention Deficit Hyperactivity Disorder ("ADHD"), with an alleged disability onset date of January 1, 2008. Tr. 56, 93-95, 108, 112. The claim was denied initially and upon reconsideration. Tr. 52-53, 54-58, 60-65. Plaintiff requested a hearing (Tr. 68) and, on October 19, 2011, a hearing was held before Administrative Law Judge Alfred J. Costanzo (the "ALJ") (Tr. 37-51). In his October 27, 2011, decision, the ALJ determined that Claimant was not disabled or entitled to SSI benefits. Tr. 12-34. Plaintiff requested review of the ALJ's decision by the Appeals Council (Tr. 11) and, on November 9, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-8. On January 14, 2013, Plaintiff filed the instant action on behalf of Claimant seeking review of the Commissioner's decision. Doc. 1.

## II. Evidence

### A.   Personal and Educational Evidence

Claimant was born in 2003. Tr. 93. He was eight years old at the time of the hearing. Tr. 40. Claimant was held back and repeated kindergarten. Tr. 50. Claimant's school wanted to hold him back and have him repeat first grade but Plaintiff insisted that Claimant proceed to the second grade. Tr. 50. At the time of the hearing, Plaintiff had not yet received Claimant's grades for second grade. Tr. 50.

### B.   Testimonial Evidence

Plaintiff was represented by counsel and testified at the hearing. Tr. 44- 51. She described three instances in 2009 and 2010 when Claimant had started fires. Tr. 44-45. In one

instance, the Claimant stated that he had burnt papers because his grandmother would not give him candy. Tr. 44. Once Plaintiff hid all the lighters, Claimant did not continue to burn things. Tr. 44-45. Plaintiff also indicated that Claimant had recently started to act out in other ways, including drawing on himself,[2] destroying his clothes, throwing, hitting and kicking things when he does not get what he wants, and hitting himself. Tr. 45, 48. Plaintiff stated that Claimant's behavioral problems were occurring at school too, including one instance where Claimant locked himself into the bathroom. Tr. 45. Claimant had not been in any fights at school but he had gotten into a fight with another child at a park. Tr. 45-46.

Claimant can shower by himself but Plaintiff has to keep an eye on him to make sure he does not waste water or spill the shampoo. Tr. 46. Plaintiff helps Claimant get dressed for school because he does not want to get up and get dressed in the mornings. Tr. 46. Claimant's one chore is to clean his room. Tr. 47. On one occasion, Claimant cleaned his room quietly but Plaintiff usually has to yell at Claimant to pick up his clothes. Tr. 47-48.

Claimant enjoys playing video games, watching television, and playing with the family dog. Tr. 47. When Plaintiff has her grandchildren over, Claimant does not play with them. Tr. 49. He usually goes off and plays on his own. Tr. 49. Claimant sometimes fights with Plaintiff's youngest grandchild. Tr. 49.

Plaintiff has to remind Claimant to do his homework and, because of his inability to pay attention, it takes Claimant a while to finish his homework. Tr. 47. Claimant sits for about 5 minutes before running off. Tr. 47.

Claimant takes two medications, Concerta and Clonidine. Tr. 46. Plaintiff indicated that the medication helps Claimant a lot but also indicated that his medication becomes less effective as the day progresses. Tr. 48. Plaintiff estimated that Claimant's medication works until about 3

---

[2] During the hearing, Claimant was drawing on himself. Tr. 45.

or 4 o'clock in the afternoon. Tr. 48. Before Claimant started to receive treatment, the only person who would watch Claimant was Plaintiff's mother-in-law. Tr. 49. Since Claimant started medication, Plaintiff's twenty-six year old daughter will now watch Claimant sometimes. Tr. 49.

### III. Standard for Disability

The standard for evaluating a child's disability claim differs from that used for an adult. 42 U.S.C. § 1382c(a)(3)(C); *see also Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 146, 147-148 (6th Cir. 2002). A child is considered disabled if he has a "medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At Step One, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At Step Two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At Step Three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.924(d).[3]

At Step Three, to determine whether a child's impairment *functionally* equals the Listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and

---

[3] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.

(6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations[4] in two domains, or an "extreme" limitation[5] in one domain, the impairment *functionally* equals the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

### IV. The ALJ's Decision

In his October 27, 2011, decision, the ALJ made the following findings:[6]

1. Claimant was born in 2003 and was a school-age child on the date of his application for SSI and was a school-age child at the time of the decision.[7] Tr. 21.

2. Claimant had not engaged in substantial gainful activity since May 29, 2009, the application date. Tr. 21.

3. Claimant had the following severe impairments: attention deficit hyperactivity disorder and oppositional defiance disorder. Tr. 21.

4. Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 21.

5. Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings. Tr. 21-30. Claimant had a marked limitation in only one domain: attending and completing tasks (Tr. 25-26) and less than marked limitation or no limitation in the other five domains (Tr. 24-30).

Based on the foregoing, the ALJ determined that Claimant had not been under a disability

---

[4] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

[5] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

[6] The ALJ's findings are summarized herein.

[7] A "school-age child" includes children who are age 6 to attainment of age 12. *See* 20 C.F.R. § 416.926a.

since May 29, 2009, the application filing date. Tr. 30.

## V. Parties' Arguments

### A. Plaintiff's Arguments

First, Plaintiff argues that the ALJ erred in concluding that Claimant did not have a marked limitation in the domain of *interacting and relating with others*. Doc. 15, pp. 9-13; Doc. 17, pp. 1-2. Since the ALJ concluded that Claimant had a marked limitation in *attending and completing tasks* (Tr. 25-26), Plaintiff asserts that, had the ALJ concluded that Plaintiff also had a marked limitation in *interacting and relating to others*, Claimant's impairment would have been found to functionally equal a Listing and Claimant would have been found to be disabled. Doc. 15, pp. 9-10.

Second, Plaintiff argues that the ALJ erred in rejecting the opinion of treating psychiatrist Madhuri Medarametla, M.D., which, if adopted, would have resulted in a finding of disability. Doc. 15, pp. 13-16; Doc. 17, pp. 3-4.

### B. Defendant's Arguments

In response, the Commissioner first argues that the ALJ reasonably concluded that the Claimant had a less than marked impairment in the domain of *interacting and relating to others*. Doc. 16, pp. 12-14. Thus, Defendant argues that substantial evidence supports the ALJ's decision that Claimant's impairments did not meet or functionally equal a Listing. Doc. 16, pp. 12-14.

Second, the Commissioner argues that the ALJ properly weighed the opinion of Dr. Medarametla. Doc. 16, pp. 14-16. The Commissioner asserts that the ALJ properly considered Dr. Medarametla's opinions, which were included on a check-box form, and concluded that the opinions deserved little weight because they were unsupported by and inconsistent with the evidence as a whole. Doc. 16, p. 14. The Commissioner also argues that Dr. Medarametla's opinion that Claimant had marked impairments was inconsistent with the doctor's own treatment

6

notes and record evidence as a whole. Doc. 16, p. 15. Finally, while not directly claiming that Dr. Medarametla was intentionally trying to assist Claimant obtain SSI, the Commissioner suggests that treating physicians may be biased and may bend over backwards to assist their patients. Doc. 16, p. 16.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d 931, 939-940 (6th Cir. 2011) (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009) (internal quotations omitted)).

Plaintiff presents a treating physician argument with respect to the ALJ's treatment and consideration of Dr. Medarametla's opinions contained in the October 7, 2011, "Diagnosis of Mental Impairments" form. Tr. 415-418.[8] In that form, Dr. Medaramelta offered opinions with

---

[8] Plaintiff presents an alternative argument with respect to the ALJ's functional equivalency finding. Plaintiff asserts that substantial evidence supports a finding of a marked limitation in the domain of *interacting and relating with others* and thus the ALJ should have concluded that Claimant is disabled. Doc. 15, pp. 9-16. As part of her argument, Plaintiff points to 2008 school records that show that a school evaluation team concluded that Claimant's "problem behaviors were measured at greater than two standard deviations below the mean in the "Serious" range."

7

respect to whether Claimant's impairment met Listing 112.11 (Attention Deficit Hyperactivity Disorder) and with respect to the functional domains. Tr. 415-418. Plaintiff asserts that the ALJ did not properly weigh Dr. Medaramelta's opinions when assessing whether Claimant *met* Listing 112.11 and did not even mention Dr. Medaramelta's opinions when discussing whether Claimant *functionally* equaled a Listing.

As discussed below, while the ALJ explained why he found Dr. Medaramelta's opinion that Claimant had marked inattention, impulsiveness, and hyperactivity (Part A of Listing 112.11) was not sufficiently supported by the medical evidence and therefore not entitled to controlling weight, he failed to discuss the weight provided to the other portions of Dr. Medaramelta's opinion, including those associated with Part B of Listing 112.11 and the functional equivalency domains. Thus, since the Commissioner failed to follow its regulations with respect to the treating physician rule, the Commissioner's decision cannot be said to be supported by substantial evidence.

**A.     Treating Physician Rule**

Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The Commissioner's regulations impose a clear duty always to give good reasons in its notices of determinations or decisions for the weight given to treating source opinions. *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be supported by the evidence in the case record, and

---

Doc. 13, p. 16 (citing Tr. 267-268). Plaintiff asserts that since Claimant's score on standardized testing was two to three standard deviations below the mean, a finding of functional equivalence was warranted. Doc. 13, pp. 12-13. Since the Commissioner failed to adhere to the treating physician rule, it is not necessary for the Court to address whether reversal or remand is warranted based on Plaintiff's alternative argument.

must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted). "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Id.* Further, "the requirement safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the treating physician rule.'" *Id.* at 938 (citing *Wilson*, 378 F.3d at 544).

If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *Wilson*, 378 F.3d at 544. In deciding the weight given, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion. *Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. § 416.927(c).

Inasmuch as the Regulations create important procedural protections for claimants with respect to treating physician opinions, failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits. *Wilson*, 378 F.3d at 546-547.

**B.      Listing 112.11 – Attention Deficit Disorder**

Listing 112.11 Attention Deficit Hyperactivity Disorder is "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." 20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.11. As provided for in Listing 112.11:

9

The required level of severity is met when the requirements in both A and B are satisfied.

    A.  Medically documented findings of all three of the following:

        1.    Marked inattention; and
        2.    Marked impulsiveness; and
        3.    Marked hyperactivity;

AND

    B.  For . . . children (age 3 to the attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.11.

The appropriate age-group criteria found in B2 of 112.02 are:

For children (age 3 to attainment of age 18), an impairment resulting in at least two of the following:

    a.    Marked impairment in age-appropriate cognitive/communicative function . . .; or
    b.    Marked impairment in age-appropriate social functioning . . .; or
    c.    Marked impairment in age-appropriate personal functioning . . .; or
    d.    Marked difficulties in maintaining, concentration, persistence, or pace.

20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.02(B)(2).

**C.**    **Interacting and relating with others domain**

When evaluating the *interacting and relating with others* domain, an ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). The Regulations further provide that when a school-age-child (age 6 to attainment of age 12) enters school, he should: be able to develop more lasting friendships with children his age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of view and tolerate differences; be well able to talk to

10

people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

**D.     Dr. Madhuri Medaramelta's October 7, 2011, opinions**

Dr. Madhuri Medaramelta, M.D., began seeing Claimant on April 11, 2011.[9]  Tr. 409. On October 7, 2011, Dr. Medarametla completed a form titled "Diagnosis of Mental Impairments – 112.11 – Attention Deficit Hyperactivity Disorder." Tr. 415-418. In the "Diagnosis of Mental Impairments – 112.11 Attention Deficit Hyperactivity Disorder" form, Dr. Medarametla offered her opinion that Claimant met Listing 112.11 (including Part A and Part B) and also offered her opinion with respect to Claimant's limitations, if any, in the functional domains. Tr. 415-418.

   **1.   Dr. Medaramelta's opinion with respect to Listing 112.11**

As it relates to the requirements found in Listing 112.11A, Dr. Medarametla opined that Claimant had medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity. Tr. 415. As it relates to the requirements in Listing 112.11B, she opined that Claimant had marked impairment in age-appropriate social functioning and marked difficulties in maintaining concentration, persistence, or pace. Tr. 426. In the section relating to impairments in age-appropriate social functioning, Dr. Medarametla commented that Claimant "poorly relates to peers and difficulty maintaining appropriate relationships." Tr. 416. Otherwise, Dr. Medarametla did not provide comments or narrative opinion.

   **2.   Dr. Medaramelta's opinions with respect to the functional domains**

As it relates to the six functional domains, Dr. Medarametla opined that Claimant had no difficulties in: (1) acquiring and using information; (2) moving about and manipulating objects; and (3) health and physical well-being. Tr. 416. She opined that Claimant had some and/or

---

[9] Prior to seeing Dr. Medaramelta, Claimant saw other medical providers, including Dr. Choure in 2009 and 2010. Tr. 315, 322, 325, 331, 339, 341-343.

11

marked difficulties in interacting and relating to others.  Tr. 416.  She opined that Claimant had marked difficulties in attending and completing tasks.  Tr. 416.  She did not rate Claimant in the functional domain of caring for himself.  Tr. 416.

E.   **The ALJ failed to comply with the treating physician rule with respect to Dr. Medaramelta's opinions**

The ALJ discussed Dr. Medaramelta's opinion that Claimant met Listing 112.11 and concluded that her opinion was not supported by either her own medical evidence of record or the overall evidence.  Tr. 21.  The ALJ explained:

> While Dr. Medaramelta does report attention and concentration problems, progress notes indicated the claimant responded well to medication.  Moreover, the claimant's mother reported to the psychiatrist that the teacher complains that the claimant has behavior problems for the first hour; however, he is able to settle down later.  Progress notes in May 2011 support that the teacher reports the claimant is behaving well in school and has no major concerns.  At follow-up in August 2011, Dr. Medaramelta noted that while the claimant was preoccupied with a game boy, he was redirectable.  The claimant's mother further indicated that the claimant calms down about 30 minutes after taking his medication.  Accordingly, the medical evidence *fails to support developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity as defined in section 112.11 of the listings*.

Tr. 21 (emphasis supplied).

The ALJ's discussion pertains to Dr. Medaramelta's opinion as to Part A of Listing 112.11 which requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity.  It does not clearly address Dr. Medaramelta's opinions with respect to Part B of Listing 112.11 nor does it address Dr. Medaramelta's opinions with respect to the functional domains.  A claimant must satisfy both Part A and Part B of Listing 112.11.  Thus, because the ALJ did explain why he found that Dr. Medaramelta's opinion with respect to Part A of Listing 112.11 was not entitled to controlling weight, his decision that Claimant did not meet Listing 112.11 might pass muster under the treating physician rule if the ALJ was only required to

determine whether Claimant's impairment *met* a Listing.[10]  However, when determining whether a child is disabled, an ALJ must also assess whether a child's impairment functionally equals a Listing.  To do this, an ALJ must assess a child under each of the six functional domains.

Here, the ALJ did provide a lengthy discussion with respect to the functional domains, including a discussion of evidence relating to Claimant's daily activities, reports from Claimant's mother, teacher reports, school records, and medical progress notes.  Tr. 21-30.  However, the ALJ failed to discuss or even mention Dr. Medaramelta's opinions with respect to the functional domains, including her opinion that Claimant had some and/or marked difficulties in *interacting and relating to others*.[11]  Tr. 416.  Although Dr. Medaramelta's opinion with respect to the *interacting and relating to others* domain is arguably unclear because she checked the "some difficulties" box and the "marked difficulties" box (Tr. 416), it is not for this Court to speculate as to how the ALJ factored or would factor this potential ambiguity into his assessment of Dr. Medaramelta's opinion.  Any argument that the ALJ's failure to discuss Dr. Medaramelta's opinion when addressing functional equivalency was harmless because the ALJ discussed Dr. Medaramelta's opinion when he addressed whether the Claimant met Listing 112.11 is without merit.  The ALJ did not discuss Dr. Medaramelta's opinion with respect to the functional domains nor did he clearly discuss why he discounted Dr. Medaramelta's opinions with respect to Part B of 112.11, which included Dr. Medaramelta's opinion that Claimant had marked impairment in age-appropriate social functioning.  Tr. 416.  Without such a discussion, this Court cannot say why the ALJ discounted Dr. Medaramelta's opinions with respect to the Claimant's social

---

[10] The ALJ found that Claimant had a marked limitation in the functional domain of *attending and completing tasks*. Tr. 25-26.  Without further explanation from the ALJ, this finding might be said to conflict with the ALJ's finding that the medical evidence of record did not support Dr. Medaramelta's opinion that Claimant has marked inattention, impulsiveness and hyperactivity.

[11] The Commissioner does not dispute that the ALJ failed to discuss Dr. Medaramelta's opinions with respect to the functional domains.  Rather, the Commissioner relies on cases outside of this Circuit to assert that, because the form is a check-box form the opinions are entitled to little weight. Doc. 15, p. 18.

functioning and ability to interact and relate to others.  Failure to follow the procedural rules for evaluating treating physician opinions will not be considered harmless error simply because a claimant may appear to have had little chance of success on the merits.[12]  *Wilson*, 378 F.3d at 546-547.  Here, even if the Commissioner could demonstrate that substantial evidence supports the ALJ's ultimate conclusion of no disability,[13] the ALJ's lack of discussion of Dr. Medaramelta's opinions with respect to Part B of Listing 112.11 and/or the functional domains denies this Court the opportunity for meaningful review to determine whether the ALJ's decision not to provide controlling weight to Dr. Medaramelta's opinions and ultimate disability decision are supported by substantial evidence.

Although a more thorough review and explanation of Dr. Medaramelta's opinions may not result in a finding of disability, in order to insure compliance with the treating physician rule, reversal and remand is warranted for further proceedings consistent with this Opinion.

---

[12] To the extent that the Commissioner suggests that a treating physician may be unduly biased in favor of her patient and therefore less reliable (Doc. 16, p. 16), such an argument runs contrary to the Sixth Circuit's view of the treating physician rule, as noted by Plaintiff in her Reply Brief (Doc. 17, pp. 3-4).

[13] To support her argument that substantial evidence supports the ALJ's decision, the Commissioner points to state agency physicians' assessments that found less than marked or no limitations in each of the functional domains.  Doc. 16, pp. 13-14 (citing Tr. 307-308, 390-395).  However, reliance upon those assessments to demonstrate substantial evidence is questionable.  For example, it appears that neither the Commissioner nor the ALJ took into account the fact that a later state agency physician, Paula Kresser, Ph.D., reviewed Claimant's file, including the state agency physicians' prior assessments, to consider whether "even though the claimant had improved with treatment, residual functional limitations are still marked and severe." Tr. 396.  In conducting her review, Dr. Kresser found that information was incomplete or inadequate.  Tr. 396-400.  She concluded that:

> Although it is obvious that some improvement is occurring with treatment and medication, it is [sic] information is not clear about the frequency, intensity and duration of residual functional limitation.  It needs to be determined how claimant compares to an average student in terms of tasks completion, need for special supervision, ability to follow rules, interacting appropriately with peers and most importantly the ability to recognize danger and take care of his own safety.

Tr. 397.

## VII. Conclusion

For the foregoing reasons, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this Opinion.

Dated: January 21, 2014

Kathleen B. Burke
United States Magistrate Judge